**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Logan McGath and Thomas Valenzuela, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>Cavendish Farms Ltd.,<br>Cavendish Farms, Inc.,<br>J.R. Simplot Co.,<br>Lamb Weston BSW, LLC,<br>Lamb Weston Holdings, Inc.,<br>Lamb Weston Sales, Inc.,<br>Lamb Weston, Inc.,<br>Lamb Weston/Midwest, Inc.,<br>McCain Foods Limited, and<br>McCain Foods USA, Inc.,<br><br>        Defendants. | Case No. 24-cv-12752<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

I.      PARTIES ......................................................................................................... 3

     A.    Plaintiffs ............................................................................................ 3

     B.    Defendants ......................................................................................... 3

II.     AGENTS AND CO-CONSPIRATORS ....................................................... 6

III.    FACTUAL ALLEGATIONS ......................................................................... 7

     A.    Overview of the Frozen Potato Products Market: Nationwide Impact on U.S. Trade and Commerce ......................................................... 7

     B.    Relevant Market ................................................................................ 8

     C.    Defendants' Coordination of Frozen Potato Products Pricing During the Class Period ................................................................................. 9

          1.   *Prices for Frozen Potato Products Escalated in Parallel Due to Defendants' Collusion* ............................................................ 10

          2.   *Defendants Implemented Simultaneous Price Increases* ...................... 11

     D.    Collusion Was Enabled by Market Structure and Characteristics ................ 11

          1.   *High Market Concentration* ................................................... 12

          2.   *Measured Anticompetitive Risks* ........................................... 12

          3.   *Barriers to Entry* .................................................................. 12

          4.   *Fragmented Buyer Market* ..................................................... 13

          5.   *Standardization of Products* ................................................... 13

          6.   *Opportunities for Coordination* .............................................. 14

          7.   *Demand Inelasticity and Lack of Substitutes* ........................... 14

IV.    JURISDICTION, VENUE AND INTERSTATE COMMERCE ................... 15

     A.    Subject Matter and Supplemental Jurisdiction ............................................ 15

     B.    Personal Jurisdiction........................................................................ 16

     C.    Venue................................................................................................ 16

     D.    Interstate Commerce......................................................................... 17

     E.    Deliberate Targeting of U.S. Commerce ........................................... 17

     F.    Harm to Competition and Consumers ............................................... 17

V.     ANTITRUST INJURY ................................................................................. 18

     A.    Impact on Competition and Pricing................................................... 18

     B.    Price Manipulation and the Nature of Injury..................................... 18

i

C.    Harm to Competition and Market Dynamics ............................................ 19

D.    Harm to Consumers ...................................................................... 19

E.    Quantification of Overcharges and Injury ................................................ 19

F.    Nature of Violation and Damages ........................................................ 20

G.    Injury and Antitrust Damages ........................................................... 20

**VI.    TOLLING OF THE STATUTES OF LIMITATIONS................................ 20**

A.    Timeliness of Claims ..................................................................... 20

B.    Ongoing Violations ....................................................................... 20

C.    Fraudulent Concealment Practices ....................................................... 21

D.    Application of Tolling .................................................................... 21

**VII.    CLASS ACTION ALLEGATIONS ................................................... 21**

**VIII.    JURISDICTION AND VENUE ...................................................... 26**

**IX.    CLAIMS FOR RELIEF ............................................................ 27**

**PRAYER FOR RELIEF ..................................................................... 123**

**JURY TRIAL DEMANDED .................................................................. 125**

Plaintiffs Logan McGath and Thomas Valenzuela, on behalf of themselves and all others similarly situated bring this Class Action Complaint for damages and injunctive relief against Defendants Lamb Weston Holdings, Inc, Lamb Weston, Inc., Lamb Weston BSW, LC, Lamb Weston/Midwest, Inc., and Lamb Weston Sales, Inc. ("Lamb Weston"); McCain Foods Limited and McCain Foods USA, Inc., ("McCain"); J.R. Simplot Co. ("J.R. Simplot"); and Cavendish Farms Ltd. And Cavendish Farms, Inc. ("Cavendish Farms") (collectively "Defendants"). Plaintiffs make the following allegations based on actual knowledge as to their own actions, facts, and circumstances, and upon information and belief and the reasonable investigation of counsel as to all other matters.

## INTRODUCTION

1.      This case involves claims of price-fixing against the largest producers of frozen French fries, hash browns, tater tots, and other frozen potato-based products ("Frozen Potato Products") in the United States. The Defendants – Cavendish Farms, Ltd. and Cavendish Farms, Inc. (collectively, "Cavendish"), J.R. Simplot Company ("J.R. Simplot"), Lamb Weston Holdings, Inc.; Lamb Weston, Inc.; Lamb Weston BSW, LLC; Lamb Weston/Midwest, Inc.; Lamb Weston Sales, Inc. (collectively, "Lamb Weston"), and McCain Foods, Ltd. and McCain Foods USA, Inc. (collectively, "McCain") – are the dominant players in this highly concentrated industry, collectively controlling over 95% of the $68 billion Frozen Potato Products market. These companies colluded to manipulate the pricing of Frozen Potato Products, harming consumers and the competitive marketplace.

2.      Starting as early as January 1, 2021, and continuing to the present ("Class Period"), the Defendants allegedly conspired to fix, raise, maintain, and stabilize the price of Frozen Potato Products. They coordinated price increases, often at nearly identical times, under the guise of

1

responding to rising input costs. These synchronized actions allowed them to leverage a temporary spike in production expenses as a pretext for permanent price hikes. Even as input costs began to decline after their 2022 peak, the Defendants continued to elevate their prices, securing unprecedented profit margins and maintaining their collusive practices. Between July 2022 and July 2024, the price of Frozen Potato Products surged by 47%, despite declining production costs.



3.     The Defendants' conspiracy led to record profits during the Class Period. For example, Lamb Weston reported a 111% year-over-year increase in net income for the first quarter of fiscal year 2024. Frozen Potato sales in dollars increased by 14.6% from July 2023 to June 2024, even though sales volumes remained flat. Defendants' conspiratorial conduct resulted in artificially inflated prices, forcing consumers to pay significantly more for Frozen Potato Products than they would have in a competitive market.

4.     Evidence demonstrates that the Defendants avoided direct price competition with one another, instead maintaining elevated prices through coordinated market behavior.

2

5.      The Frozen Potato Products market's structural characteristics made it particularly vulnerable to collusion. With few large sellers, high barriers to entry, fragmented buyers, inelastic demand, and frequent repeat purchases, the market provided ample opportunities for coordinated behavior. Additionally, co-packing arrangements, trade association events, and shared market intelligence further enabled Defendants to orchestrate and monitor their conspiracy effectively.

6.      This anticompetitive conduct has resulted in significant financial harm to consumers. On behalf of a proposed class of tens of millions of consumers nationwide in the indirect purchaser states, as defined below, Plaintiffs seek to end the Defendants' illegal scheme, recover damages, and restore competition to the Frozen Potato Products marketplace.

## I.      PARTIES

### A.      Plaintiffs

7.      Plaintiff Logan McGath is a California resident residing in the County of Sacramento where he indirectly purchased Frozen Potatoes from the Defendants for his personal use during the Class Period and suffered antitrust injury because of the violations alleged in this Complaint.

8.      Plaintiff Thomas Valenzuela is a California resident residing in the County of Siskiyou where he indirectly purchased Frozen Potatoes from the Defendants for his personal use during the Class Period and suffered antitrust injury because of the violations alleged in this Complaint.

### B.      Defendants

#### 1.      *Cavendish Farms*

9.      Defendant Cavendish Farms, Inc., incorporated in Delaware with its principal office in North Dakota, serves as the United States-based subsidiary of Cavendish Farms Ltd.

3

10. Defendant Cavendish Farms Ltd., a subsidiary of the J.D. Irving Group of Companies, is headquartered in Dieppe, New Brunswick, Canada.

11. The company reported sales of $4.2 billion in 2023 and upon information and belief, Cavendish Farms's market share for Frozen Potato Products resides around 8%.

12. For the purposes of this complaint, both Cavendish Farms Ltd. and Cavendish Farms, Inc. are collectively referred to as "Cavendish Farms."

### 2. *J.R. Simplot*

13. Defendant J.R. Simplot Company, incorporated in Nevada and headquartered in Boise, Idaho, is a privately held corporation.

14. In previous legal proceedings concerning patents for Frozen Potato Products, J.R. Simplot has acknowledged that it distributes its products in this District and that both the District and the State of Illinois possess the authority to exercise personal jurisdiction and venue over the company.

15. The company reported revenues of $9.8 billion in 2023 and upon information and belief, J.R. Simplot's market share for Frozen Potato Products resides around 20%.

16. For the purposes of this complaint, J.R. Simplot Company will be referred to as "J.R. Simplot."

### 3. *Lamb Weston*

17. Defendant Lamb Weston Holdings, Inc., a Delaware-based corporation headquartered in Eagle, Idaho, is a leading producer, distributor, and marketer of value-added Frozen Potato Products. Lamb Weston Holdings, Inc. owns and operate several U.S. subsidiaries including Defendant Lamb Weston, Inc. (a Delaware corporation), Defendant Lamb Weston BSW, LLC (a Delaware limited liability company), Defendant Lamb Weston/Midwest, Inc. (a

4

Washington corporation) and Defendant Lamb Weston Sales, Inc. (a Delaware corporation). These subsidiaries are fully owned and consolidated within Defendant Lamb Weston Holdings, Inc.'s financial statements, operating collectively as a unified enterprise. In all public communications and marketing efforts, the company is referred to collectively as "Lamb Weston."

18.     Lamb Weston distributes its Frozen Potato Products throughout North America to a diverse range of customers, including quick-service and full-service restaurants, food service distributors, non-commercial channels, and retailers. In the fiscal year 2023, Lamb Weston's North American segment reported sales of $4.2 billion and upon information and belief, Lamb Weston's market share for Frozen Potato Products resides around 40%.

19.     For the purposes of this complaint, Lamb Weston Inc. and its subsidiaries are collectively referred to as "Lamb Weston."

###     4.      *McCain*

20.     Defendant McCain Foods Limited is a corporation organized under the laws of New Brunswick, Canada, with its corporate headquarters in Toronto, Canada.

21.     Defendant McCain Foods USA, Inc., a subsidiary of McCain Foods Ltd., is responsible for McCain Foods' U.S. operations and is incorporated in Maine with its principal place of business located in Oakbrook Terrace, Illinois. The subsidiary is headquartered at One Tower Lane, 11th Floor, Oakbrook Terrace, Illinois, located within the Northern District of Illinois.

22.     Defendant McCain Foods Limited is a privately owned entity with global revenues exceeding 14 billion Canadian dollars, positioning it as a leading producer of Frozen Potato Products. Upon information and belief, McCain Foods' market share for Frozen Potato Products resides around 30%.

23.    For the purposes of this complaint, McCain Foods Limited and McCain Foods USA, Inc. are collectively referred to as "McCain."

## II.    AGENTS AND CO-CONSPIRATORS

24.    Defendants' alleged anticompetitive and unlawful conduct was executed, authorized, or directed by their officers, directors, agents, employees, or representatives while actively engaged in the management, direction, control, or transaction of Defendants' business operations. Furthermore, Defendants bear responsibility for actions carried out by entities they acquired through mergers or acquisitions that contributed to the alleged conspiracy. Each corporate Defendant, operating through its subsidiaries, affiliates, and agents, collectively functioned as a cohesive unit.

25.    Representatives and agents of each corporate Defendant acted under the authority – whether explicit or implied – granted by their respective organizations. When Plaintiffs refer to a corporate family or multiple companies collectively in the context of conspiracy allegations, it asserts that one or more employees or representatives from those entities participated in collusive meetings or activities on behalf of all members of that corporate family. Defendants presented themselves as unified corporate families, and individual participants in the conspiracy often did not distinguish between the corporate affiliations of their counterparts. Consequently, all entities within these corporate families knowingly and actively engaged in a conspiracy to maintain inflated prices for Frozen Potato Products.

26.    Various other persons, firms, and corporations not named as Defendants also participated as co-conspirators and performed acts and made statements in furtherance of the conspiracy. These unnamed individuals or firms contributed actions and statements that furthered

6

the overarching conspiracy. Defendants are jointly and severally liable for the acts of their co-conspirators, whether or not these co-conspirators are named as Defendants in the Complaint.

27.     Whenever reference is made to any act of a corporation, the allegation means that the corporation engaged in the act through its officers, directors, agents, employees, or representatives while actively managing, directing, controlling, or conducting the corporation's business. Each named Defendant acted as the agent, joint-venturer, or principal actor on behalf of the other Defendants concerning the violations and coordinated conduct alleged in the Complaint.

## III.    FACTUAL ALLEGATIONS

### A.    Overview of the Frozen Potato Products Market: Nationwide Impact on U.S. Trade and Commerce

28.     Frozen Potato Products, such as French fries, hash browns, and tater tots, are integral to the U.S. food industry, contributing significantly to the national economy and consumer diets. According to a National Potato Council report, the potato industry contributed $100.9 billion to the U.S. economy in 2021, with $53.5 billion directly added to the GDP.[1] A significant portion of this value – approximately $49.1 billion – came from the processing, wholesaling, and retail activities associated with frozen and processed potato products.[2]

29.     By 2018, over two-thirds of all potatoes sold in the United States were processed into Frozen Potato Products, underscoring the importance of this market.[3] The industry has grown

---

[1] National Potato Council releases groundbreaking report on U.S. Potato Industry's contribution to America's economy, National Potato Council (2023), https://www.nationalpotatocouncil.org/economic-impact-report/

[2] *Id.*

[3] A third of u.s.-grown potatoes become frozen french fries used mostly by Food Service, Economic Research Service - U.S. Department of Agriculture, https://www.ers.usda.gov/data-products/chart-gallery/gallery/chart-detail/?chartId=99117

7

substantially, with projections estimating an increase in market value from $65.06 billion in 2022 to $92.63 billion by 2030.[4] Among Frozen Potato Products, French fries dominate, appearing on 59.6% of restaurant menus across the U.S. in 2024.[5] Other products in this market include hash browns, tater tots, and shaped Frozen Potato Products, all of which are popular among consumers.

30.     Approximately "half of all potatoes going into food in the United States are now used to create" Frozen Potato Products.[6] These products are distinct in that they provide significant advantages, including extended shelf life, convenience, and reduced preparation time for downstream users such as restaurants and institutional buyers.

**B.    Relevant Market**

31.     The Relevant Geographic Market for this case is the United States, encompassing all regions where Frozen Potato Products are sold, distributed, or consumed. The Relevant Product Market is the market for Frozen Potato Products, which includes French fries, hash browns, tater tots, and other frozen potato-based products. These products are distinct from the fresh market due to their practical advantages over fresh potatoes, including extended shelf life and ease of preparation.[7]

---

[4] Frozen potato market to be worth $92.63bn globally by 2030 - exclusive report by the insight partners, GlobeNewswire (2023), https://www.globenewswire.com/news-release/2023/09/27/2750253/0/en/Frozen-Potato-Market-to-be-Worth-92-63Bn-Globally-by-2030-Exclusive-Report-by-The-Insight-Partners.html

[5] Menu penetration for French fries is expected to grow to a record 60.9% by 2028, Potato Business (2024), https://www.potatobusiness.com/market/menu-penetration-for-french-fries-is-expected-to-grow-to-a-record-60-9-by-2028/

[6] Fries on the rise: Nearly half of potatoes now go into frozen products, Economic Research Service - U.S. Department of Agriculture, https://www.ers.usda.gov/data-products/chart-gallery/gallery/chart-detail/?chartId=107266

[7] Frozen vs Fresh Potatoes: Spud Showdown, Texas Real Food (2004), https://discover.texasrealfood.com/thaw-order/frozen-vs-fresh-potatoes-spud-showdown

32.     The Frozen Potato Products market is highly concentrated, with four dominant producers – Lamb Weston, McCain, J.R. Simplot, and Cavendish Farms – controlling nearly 97-98% of the market. The market share of each producer, Lamb Weston (40%), McCain (30%), J.R. Simplot (20%), and Cavendish Farms (7-8%), has created an oligopolistic structure, aiding coordinated behavior.

33.     This market satisfies the Hypothetical Monopolist/Monopsonist Test (HMT test) used by federal antitrust enforcement agencies. The test asks whether a hypothetical monopolist likely would undertake at least a small but significant and non-transitory increase in price (SSNIP) without losing substantial sales to alternative products.[8] The sustained price increases by Defendants during the Class Period, without losing market share, confirm the market is properly defined.

**C.     Defendants' Coordination of Frozen Potato Products Pricing During the Class Period**

34.     Defendants acted in concert to fix, raise, maintain, and stabilize Frozen Potato Products prices, leveraging tools such as Circana's PotatoTrac ("provides market information, tracking, analytic, and advisory services")[9] and trade associations like National Potato Promotion Board (NPPB) to coordinate pricing strategies. These tools provided Defendants with proprietary pricing data and facilitated simultaneous price hikes, ensuring market-wide collusion.

---

[8] 2023 Merger Guidelines 4. Analytical, Economic, and Evidentiary Tools 4.3. Market Definition, Antitrust Division U.S. Department of Justice, https://www.justice.gov/atr/merger-guidelines/tools/market-definition

[9] The NPD Group, PotatoPro.com, https://www.potatopro.com/companies/npd-group

9

1.      *Prices for Frozen Potato Products Escalated in Parallel Due to Defendants' Collusion*

35.     Beginning as early as January 2021 and continuing into the present, Defendants collectively engaged in unlawful practices to manipulate the prices of Frozen Potato Products sold, distributed, manufactured, or imported into the U.S. These coordinated efforts aimed to fix, increase, and stabilize prices in violation of antitrust laws.

36.     Price trends for Frozen Potato Products during this period reflect behavior inconsistent with a competitive market. Defendants, who collectively control approximately 97% to 98% of the market, exerted such significant influence that any shifts in industry pricing mirrored their collusive actions.

37.     Prices for Frozen Potato Products began rising in 2021 and surged dramatically in 2022, sustaining unprecedented levels through at least July 2024. As a result, Defendants experienced record-setting profit margins. Industry analysts, unaware of these alleged collusive practices, underestimated the longevity of this margin expansion.

38.     Data from the Federal Reserve Bank of St. Louis showed that Frozen Potato Products prices reached their highest levels since 1967 as of August 2024.[10]

39.     Notably, these price increases cannot be justified by rising input costs. Between July 2022 and July 2024, Frozen Potato Products prices rose by 47%, even as Defendants' costs fell. Costs peaked in late 2022 but decreased significantly – by approximately 33% – over the

---

[10] U.S. Bureau of Labor Statistics, Producer Price Index by Commodity: Processed Foods and Feeds: Frozen Potato Products (French-Fried, Patties, Puffs, etc.), Federal Reserve Bank of St. Louis, https://fred.stlouisfed.org/series/WPU024502.

following two years. Despite these declines, Defendants maintained inflated prices, reflecting their coordinated efforts to artificially sustain high profit margins.

### 2. *Defendants Implemented Simultaneous Price Increases*

40.     Defendants' sharp, parallel price increases during 2021 and 2022 were not the result of unilateral conduct. Rather, they resulted from coordinated, near-simultaneous actions by Defendants to impose uniform price hikes on customers.

41.     With control over nearly the entire Frozen Potato Products market, Defendants wielded immense market power, enabling them to collectively dictate prices. Defendants' coordination and understanding was such that if one Defendant raised prices, the other Defendants would follow suit, eliminating any risk of undercutting by competitors.

42.     Before this alleged conspiracy, price adjustments typically reflected individual companies' efforts to maintain profit margins. However, starting in early 2021, Defendants began engaging in corresponding price increases.

43.     By 2022, this practice had become routine. In February 2022, within a span of just five days, all four companies issued letters announcing substantial price increases. Although the specific price adjustments varied, they shared a common effective date: April 1, 2022.

### D.     Collusion Was Enabled by Market Structure and Characteristics

44.     The structure and inherent characteristics of the Frozen Potato Products market made it particularly susceptible to collusion. Factors such as high market concentration, inelastic demand, limited substitutes, significant entry barriers, and opportunities for coordination allowed Defendants to orchestrate and sustain price-fixing efforts effectively.

11

1.    ***High Market Concentration***

45.    Over the past two decades, the Frozen Potato Products industry has seen significant consolidation. What was once a competitive market with approximately over a dozen players has been reduced to an oligopoly dominated by four companies: Lamb Weston (40%), McCain Foods (30%), J.R. Simplot (20%), and Cavendish Farms (7–8%). Together, these four entities control over 95% of the market.

46.    This level of concentration provides Defendants with the ability to influence the entire market, as even small changes in their collective pricing or output strategies ripple through the industry. The concentrated structure also simplifies communication and coordination among market leaders, reducing the risk of defection from collusive agreements.

2.    ***Measured Anticompetitive Risks***

47.    The U.S. Department of Justice employs the Herfindahl-Hirschman Index (HHI) to assess market concentration, with scores exceeding 1,800 signaling high concentration. The Frozen Potato Products market scores a staggering 2,958, far above this threshold, underscoring its anticompetitive potential. A market this concentrated presents significant risks for consumer harm, as dominant firms face fewer constraints on their ability to raise prices or limit production.

3.    ***Barriers to Entry***

48.    Significant barriers to entry further protect this oligopoly and deter new competitors. Establishing a Frozen Potato Products processing facility demands massive capital investment. For instance, Cavendish Farms invested $430 million in 2019 to build a new plant in Alberta, Canada.[11] Similarly, J.R. Simplot allocated approximately $460 million in 2018 to nearly

---

[11] Cavendish Farms Opens New $430 Million Frozen Potato Processing Plant in Lethbridge, Alberta, Cavendish Farms (2019), https://us.cavendishfarms.com/en/our-story/latest-news/lethbridge-opening/

triple the size of its processing facility in Manitoba, Canada.[12] Most recently, in 2023, McCain committed $600 million to double the capacity of its processing facility in Coaldale, Alberta.[13] Such costs make entering the market prohibitively expensive for most potential competitors.

49.     Beyond capital requirements, entrants face logistical hurdles, particularly the challenge of securing access to raw materials. Defendants have long-standing, exclusive contracts with potato growers in regions covering the United States.

### 4.     *Fragmented Buyer Market*

50.     On the demand side, the fragmented nature of the buyer base further facilitates collusion. With over one million food service operators and thousands of retail outlets purchasing Frozen Potato Products, the buyer market is too dispersed to mount an effective challenge to Defendants' pricing strategies.

51.     These buyers, ranging from small independent restaurants to large institutional food service providers, often lack the bargaining power to negotiate lower prices. Most food service operators are unable to switch to alternatives due to the lack of substitutes for products like french fries, which are essential menu items.

### 5.     *Standardization of Products*

52.     The homogeneity of Frozen Potato Products further simplifies collusion. As standardized commodities, these products are virtually interchangeable, leaving price as the primary competitive factor. This lack of differentiation reduces the complexity of reaching and enforcing collusive agreements, as monitoring price deviations is straightforward.

---

[12] International Food Processor Announces Major Expansion of Manitoba Operations, Province of Manitoba (2018), https://news.gov.mb.ca/news/?item=43112&posted=2018-02-14

[13] McCain Foods Makes Largest Global Investment in Company History, McCain Foods Limited (2023), https://www.mccain.com/information-centre/news/mccain-foods-coaldale/

53.     Economic theory supports the notion that standardized products in highly concentrated markets are particularly vulnerable to cartel behavior. In the Frozen Potato Products industry, this uniformity allowed Defendants to easily detect and penalize any deviations from their price-fixing agreements, ensuring compliance among co-conspirators.

### 6.      *Opportunities for Coordination*

54.     Defendants also had ample opportunities to coordinate their efforts through trade associations, co-packing agreements, and shared market intelligence. Organizations such as the Potato Association of America and the National Potato Council provided regular forums for industry leaders to interact. These meetings, held under the guise of promoting industry interests, facilitated communication and information exchange among Defendants.

55.     Co-packing arrangements, a common practice in the industry, allowed Defendants to outsource production to one another. These agreements necessitated discussions about production volumes, pricing, and logistics, creating additional opportunities for collusion.

56.     Additionally, tools like PotatoTrac enabled Defendants to monitor market dynamics and ensure adherence to their collusive strategies. PotatoTrac, operated by Circana (formerly NPD Group), provides detailed market share and sales analysis data exclusively to Defendants. This service allowed them to track each other's performance, ensuring that no company undercut the agreed-upon pricing structure.

### 7.      *Demand Inelasticity and Lack of Substitutes*

57.     The inelastic nature of demand for Frozen Potato Products further enabled collusion. When prices rise, the quantity demanded for these products decreases only marginally, as there are no adequate substitutes, especially in the food service sector. Products like french fries are essential for restaurants, and their absence could harm customer satisfaction and profitability.

58.     This inelasticity gives producers significant leverage to raise prices without fear of losing substantial sales volume. For example, Lamb Weston's CEO remarked in 2022 that the company had not observed significant elasticity in demand for its products,[14] indicating that price increases did not deter buyers.

59.     In summary, the combination of a concentrated market structure, high entry barriers, fragmented buyers, standardized products, inelastic demand, and frequent opportunities for coordination created a perfect environment for collusion. These factors not only facilitated the formation of Defendants' price-fixing cartel but also ensured its effectiveness in maintaining supra-competitive prices to the detriment of consumers.

## IV.     JURISDICTION, VENUE AND INTERSTATE COMMERCE

### A.     Subject Matter and Supplemental Jurisdiction

60.     This antitrust class action is brought under Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26) to address violations of Section 1 of the Sherman Act (15 U.S.C. § 1), as well as related state antitrust laws and claims of unjust enrichment. Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331, 1332(d), 1337, and 1367. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1337 because Plaintiffs assert injunctive relief claims under federal antitrust laws aimed at remedying violations of the Sherman Act.

61.     Additionally, the Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367, as these claims arise from the same factual foundation and form

---

[14] Annie Gasparro and Jesse Newman, Demand for Comfort Food Greases Market for All Things Fried, WSJ.COM, April 17, 2022, *available at* https://www.wsj.com/articles/fried-food-comfort-grease-chicken-cheese-fries-waffles-11650217251

part of the same case or controversy. The intertwined nature of the state and federal claims ensures that the Court can comprehensively address the entirety of the dispute.

62.     The Court also has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The proposed class comprises more than 100 members, and the amount in controversy exceeds $5,000,000, exclusive of costs and interest.

## B.     Personal Jurisdiction

63.     The Court has personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k) and 15 U.S.C. § 22. These provisions authorize antitrust lawsuits against corporations in any district where they may be found or transact business. Defendants conduct substantial business activities within this District, including the manufacturing, distribution, marketing, and sale of Frozen Potato Products. Additionally, a significant portion of the alleged unlawful activities – such as pricing decisions, coordination, and conspiracy – took place within this jurisdiction. McCain Foods USA, Inc., for example, has its corporate headquarters and principal place of business in Oak Brook, Illinois, which lies within the Northern District of Illinois.

64.     Moreover, Defendants knowingly engaged in activities that had foreseeable effects on interstate commerce, including this District. These activities were part of a concerted effort to manipulate prices and restrict competition in a market valued at over $65 billion in 2022, with projections exceeding $92 billion by 2030.

## C.     Venue

65.     Venue is proper in this District under 28 U.S.C. §§ 1391(a)-(d) and 15 U.S.C. §§ 15(a) and Defendants transacted business within this District, including advertising Frozen Potato Products, employing sales personnel, and maintaining a physical presence here. Furthermore, a

substantial portion of the unlawful conduct, including collusion and price-fixing, occurred within this District. Notably, McCain Foods USA, Inc.'s principal place of business in Oak Brook, Illinois, further substantiates the propriety of this venue.

### D. Interstate Commerce

66.     Defendants' actions have significantly impacted interstate commerce by restraining trade and harming competition on a national scale. The Frozen Potato Products market is an integral part of the U.S. economy, valued at $65 billion in 2022, with Defendants distributing their products across state lines and into international markets. Throughout the Class Period, Defendants ensured a continuous and uninterrupted flow of these goods in interstate commerce, supplying customers in states other than where the products were manufactured. Additionally, goods originating in Canada and sold in the United States qualify as import commerce, and the alleged price-fixing conspiracy directly and substantially impacted such transactions, raising prices for U.S. buyers.

### E. Deliberate Targeting of U.S. Commerce

67.     Defendants' anticompetitive practices were intentionally directed at U.S. markets, both interstate and import. Their coordinated efforts to fix, stabilize, and artificially inflate prices were designed to disrupt competitive pricing dynamics across the United States. By leveraging their dominant market positions, Defendants caused significant financial harm to consumers and businesses by compelling them to pay artificially inflated prices for Frozen Potato Products.

### F. Harm to Competition and Consumers

68.     Defendants' conduct deprived the market of fair competition. In the absence of this conspiracy, the prices of Frozen Potato Products would have been determined by competitive market forces. Instead, Defendants' collusion restricted competition, distorted natural pricing

mechanisms, and imposed significant financial harm on consumers. By raising prices, limiting output, and stifling innovation, Defendants eliminated the benefits of a free and open marketplace, leaving consumers with fewer choices and higher costs.

69.     Plaintiffs seek to end this anticompetitive behavior and restore competition in the Frozen Potato Products market. The lawsuit demands treble damages, litigation expenses, and reasonable attorney fees under Sections 4 and 16 of the Clayton Act. Additionally, Plaintiffs seek injunctive relief to prevent further violations of Section 1 of the Sherman Act, along with any other remedies permitted under federal and state law.

## V.     ANTITRUST INJURY

### A.     Impact on Competition and Pricing

70.     The Defendants' antitrust conspiracy led to significant anticompetitive effects within the Frozen Potato Products market, including:

(a)     Suppressing or outright eliminating price competition;

(b)     Artificially fixing, raising, maintaining, or stabilizing the prices of Frozen Potato Products at inflated levels;

(c)     Depriving purchasers of the benefits of fair, free, and open competition in the marketplace; and

(d)     Forcing Plaintiffs and other Class members to pay inflated prices, which were a direct and foreseeable result of Defendants' unlawful conduct.

### B.     Price Manipulation and the Nature of Injury

71.     The price of Frozen Potato Products became substantially and artificially elevated during the Class Period due to Defendants' coordinated behavior. This pricing pattern starkly contrasts with trends before the Class Period and is inconsistent with the fact that input costs for

Frozen Potato Products significantly declined during the same timeframe. As a direct consequence, consumers were forced to pay supra-competitive prices for an inelastic product that lacks substitutes – potatoes.

### C.     Harm to Competition and Market Dynamics

72.     Defendants' conduct harmed competition by throttling any incentive to compete on price, quality, service, or innovation. By coordinating prices in lockstep, Defendants effectively eliminated price competition and undermined the principles of a free market. This conduct has left competitors in the Relevant Market unable to penetrate the artificially manipulated market due to inflated prices. In a competitive environment free from Defendants' collusion, other competitors would have been better positioned to offer competitive alternatives and lower prices to consumers.

### D.     Harm to Consumers

73.     As a result of Defendants' conduct, consumers, including Plaintiffs, were directly harmed. During the Class Period, the price of potatoes increased by as much as 43%. Specifically, between July 2023 and June 2024, Frozen Potato Products rose by 14.6%. These sustained price increases deprived consumers of competitive pricing benefits, forcing them to overpay throughout the Class Period.

### E.     Quantification of Overcharges and Injury

74.     The overcharges resulting from Defendants' conduct can be reliably measured and quantified through well-established economic and statistical models commonly used in antitrust damage analysis. These models will demonstrate the extent to which Defendants' conspiracy inflated prices, causing financial harm to Plaintiffs and Class members.

F. **Nature of Violation and Damages**

75.     The contract, combination, or conspiracy orchestrated by Defendants constitutes a per se violation of federal antitrust laws. Such conduct, inherently harmful to competition, is illegal regardless of any justification. The inflated prices paid by Plaintiffs and Class members represent a classic example of antitrust injury, precisely the harm the antitrust laws were designed to prevent. Defendants enriched themselves at the expense of consumers and businesses, creating widespread financial harm.

G. **Injury and Antitrust Damages**

76.     As a direct consequence of Defendants' antitrust violations, Plaintiffs and other Class members suffered tangible harm to their business or property. Specifically, they incurred financial damages by paying artificially inflated prices for Frozen Potato Products, damages that would not have occurred absent Defendants' illegal conduct.

VI. **TOLLING OF THE STATUTES OF LIMITATIONS**

A. **Timeliness of Claims**

77.     Purchases made by Plaintiffs and other Class members within four years of the filing date of this Complaint are actionable and not barred by the applicable four-year statutes of limitations. For these claims, tolling of the statutes of limitations is unnecessary.

B. **Ongoing Violations**

78.     Defendants continued their anticompetitive behavior throughout the applicable limitations period, engaging in activities that violated antitrust laws. By increasing prices and causing Plaintiffs and Class members to pay artificially inflated amounts, Defendants committed overt acts in furtherance of their conspiracy. These acts constitute a continuing violation of the Sherman Act, ensuring the claims remain within the statutory period.

20

### C. Fraudulent Concealment Practices

79.     Defendants undertook affirmative efforts to conceal their unlawful price-fixing conspiracy, using misleading practices and pretextual justifications for their price increases. Such conduct included deceptive explanations for inflated prices designed to obscure the true nature of their collusive activities. Price-fixing conspiracies like the one alleged here are inherently self-concealing, further shielding Defendants' violations from detection. For example, Lamb Weston implemented specific practices to avoid creating discoverable evidence. For instance, managers were directed to use text messages instead of emails when discussing competitor pricing and market intelligence, minimizing the risk of documentation that could be uncovered during an antitrust investigation. Additionally, although Lamb Weston managers obtained competitors' price announcements, they were prohibited from emailing this information to senior executives, enabling those executives to plausibly deny knowledge of the announcements.

### D. Application of Tolling

80.     To the extent tolling is necessary for some or all claims alleged by Plaintiffs and the Class, the four-year statutes of limitations under the Sherman Act are tolled pursuant to the doctrine of fraudulent concealment. Defendants' deliberate efforts to hide their conspiracy delayed discovery of their unlawful conduct, preventing Plaintiffs and Class members from bringing their claims earlier.

## VII. CLASS ACTION ALLEGATIONS

81.     Plaintiffs bring this action for damages and injunctive relief on behalf of itself and a class of similarly situated persons and entities pursuant to Federal Rules of Civil Procedure, Rule 23(a), (b)(2) and (b)(3), with the class initially defined to include (the "Class"):

> All natural persons and entities who indirectly purchased at least one
> Frozen Potato Product for their own use and not for resale during the Class

Period that was manufactured or sold by the Defendants, or any current or former affiliate thereof.

82.     Plaintiffs also bring this action on behalf of themselves and as a class of purchasers from the Indirect Purchaser States under Rule 23(a) and (b)(3), seeking damages pursuant to state antitrust and consumer protection laws as well as common law unjust enrichment on behalf of the following class ("Damages Class"):

> All natural persons and entities who indirectly purchased at least one Frozen Potato Product for their own use and not for resale in one of the Indirect Purchaser States during the Class Period that was manufactured or sold by the Defendants, or any current or former affiliate thereof.

83.     The "Indirect Purchaser States," for purposes of this Complaint, include Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, West Virginia, and Wisconsin.

84.     The class definition specifically excludes the following persons or entities: (a) any of the Defendants named herein; (b) any of the corporate Defendants' parent companies, subsidiaries, and affiliates; (c) any of the Defendants' officers, directors, management, employees, subsidiaries, affiliates or agents; (d) all governmental entities; (e) all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; (f) the judges and chambers staff in this case, as well as any members of their immediate families; and (g) all jurors assigned to this case.

85.     Plaintiffs reserve the right to modify or amend the definition of the class before the Court determines whether certification is appropriate.

86.     <u>Numerosity</u>, Fed. R. Civ. P. 23(a)(1):  Plaintiffs do not know the exact number of Class members because such information presently is in the Defendants' control. But based on the nature of the trade and commerce involved, the Class is so numerous and geographically dispersed across the United States that joinder of all members is impracticable. Plaintiffs reasonably believe that there are at least thousands of members in the Class.

87.     <u>Common Questions Predominate</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3):  Numerous questions of law and fact are common to the Class related to the existence of the anticompetitive conduct alleged, and the type and common pattern of injury sustained as a result thereof, including but not limited to:

a.      Whether Defendants engaged in an agreement, combination, or conspiracy to fix, inflate, maintain, or stabilize the prices paid for Frozen Potato Products during the Class Period;

b.      Whether such agreements constituted violations of the Sherman Antitrust Act;

c.      The identity of the participants of the alleged conspiracy;

d.      The duration of the conspiracy alleged herein, and the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy;

e.      Whether Defendants fraudulently concealed their misconduct;

f.      Whether and to what extent Defendants' anticompetitive scheme inflated prices of Frozen Potato Products above competitive levels;

g.      The nature and scope of injunctive relief necessary to restore competition; and

23

h.    The measure of damages suffered by Plaintiffs and the Damages

Class.

These and other questions of law or fact that are common to the members of the Class predominate over any questions affecting only individual members of the Class. Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

88.    <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of the claims of other members of the Class. Plaintiffs' claim arises from the same common course of conduct giving rise to the claims of the Class, and the relief sought is common to the Class.

89.    Plaintiffs and the other Class members were injured by the same unlawful conduct, which resulted in their paying more for Frozen Potato Products than they would have in a competitive market.

90.    <u>Adequacy of Representation</u>, Fed. R. Civ. P. 23(a)(4): Plaintiffs will fairly and adequately represent the interests of the Class because Plaintiffs purchased Frozen Potato Products directly from Defendants within the United States during the Class Period. Plaintiffs have no material conflicts with any other members of the Class that would be antagonistic to those of the other members of the Class. Plaintiffs seeks no relief that are adverse to the interests of other members of the Class, and the infringement of rights and damages Plaintiffs sustained are typical of those of other members of the Class. Furthermore, Plaintiffs have retained sophisticated and competent counsel who are experienced in prosecuting antitrust class actions, as well as other complex litigation. Plaintiffs intend to prosecute this action vigorously.

91. <u>Common Grounds for Injunctive Relief</u>, Fed. R. Civ. P. 23(b)(2): Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

92. <u>Superiority</u>, Fed. R. Civ. P. 23(b)(3): Class action treatment is a superior method for the fair and efficient adjudication of the controversy in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. The relatively small damages suffered by individual members of the Class compared to the expense and burden of individual prosecution of the claims asserted in this litigation means that, absent a class action, it would not be feasible for members of the Class to seek redress for the violations of law herein alleged. Further, individual joinder of all damaged members of the Class is impractical, and the prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants. Accordingly, the benefits of proceeding through the class mechanism, including providing injured persons with a method of obtaining redress for claims that are not practicable for them to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

93. This class action is superior to other alternatives for the fair and efficient adjudication of this controversy. Prosecuting the claims pleaded herein as a class action will eliminate the possibility of repetitive litigation. There will be no material difficulty in the management of this action as a class action.

94.     The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## VIII.  JURISDICTION AND VENUE

95.     Plaintiffs have initiated this antitrust class action lawsuit under Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26). The lawsuit aims to recover triple damages and cover litigation expenses, including reasonable attorney fees, for the harm experienced by the Plaintiffs and other Class members. Furthermore, Plaintiffs seek an injunction to prevent the Defendants from continuing their anticompetitive practices and requests any other relief permitted under U.S. law for violations of Section 1 of the Sherman Act (15 U.S.C. § 1).

96.     This Court possesses subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332(d), 1337, and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15(a) and 26). Specifically, the Court is authorized to adjudicate the Plaintiffs' claims for injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26.

97.     Personal jurisdiction over the Defendants is established in this Court under Federal Rule of Civil Procedure 4(k) and 15 U.S.C. § 22, which permit bringing an antitrust lawsuit against any corporation in any district where that corporation may be found or transacts business as well as allows process in such cases to be served in any district where that corporation may be found.

98.     Venue is proper in this District under 28 U.S.C. §§ 1391(a)–(d) and 15 U.S.C. §§ 15(a) and 22. During the Class Period (as defined below), the Defendants conducted business within this District, and a substantial portion of the activities in question occurred here. Notably, McCain Foods USA, Inc. maintains its corporate headquarters and principal place of business in Oak Brook, Illinois, which lies within the Northern District of Illinois.

99.     The Defendants' alleged conduct occurred within the flow of interstate commerce, including within this District, and was designed to and did have a direct and substantial impact on such commerce.

100.     Throughout the Class Period, the Defendants continuously processed and sold Frozen Potato Products within the interstate commerce framework, including within this District. Their activities encompassed advertising Frozen Potato Products in local media and employing sales personnel here. The Defendants' actions have had and continue to exert a direct, substantial, and reasonably foreseeable effect on interstate commerce, including within this District.

## IX.     CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of Section 1 of the Sherman Act (15 U.S.C. § 1)**
**Restraint of Trade**
**(on behalf of Plaintiffs and the Nationwide Injunctive Class)**

101.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

102.     Defendants and unnamed co-conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

103.     The acts done by the Defendants as part of, and in furtherance of, its and its co-conspirators' contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of their affairs

104.     During the Class Period, the Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially maintain prices for Frozen Potato Products, thereby creating anticompetitive effects.

27

105.     The anticompetitive acts were intentionally directed at the United States market for Frozen Potato Products and had a substantial and foreseeable effect on interstate commerce by fixing, artificially raising, maintaining and/or stabilizing prices, rigging bids for, and allocating the market for Frozen Potato Products throughout the United States.

106.     The conspiratorial acts and combinations have caused unreasonable restraints in the market for Frozen Potato Products.

107.     As a result of the Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Injunctive Class who purchased Frozen Potato Products have been harmed by being forced to pay inflated, supra-competitive prices for Frozen Potato Products.

108.     In formulating and carrying out the alleged agreement, understanding and conspiracy, the Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

109.     The Defendants and their co-conspirators' conspiracy had the following effects, among others.

     i.     Price competition in the market for Frozen Potato Products has been restrained, suppressed, and/or eliminated in the United States;

     ii.     Prices for Frozen Potato Products sold by the Defendants and their co-conspirators haven been maintained at artificially high, non-competitive levels throughout the United States; and

   iii. Plaintiffs and members of the Nationwide Injunctive Class who purchased Frozen Potato Products indirectly from the Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

110. Plaintiffs and members of the Nationwide Injunctive Class have been injured and will continue to be injured in their business and property by paying more for Frozen Potato Products purchased indirectly from the Defendants and their co-conspirators than they would have paid and will pay in the absence of the conspiracy.

111. The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

112. Plaintiffs and members of the Nationwide Injunctive Class are entitled to an injunction against the Defendants, preventing and restraining the violations alleged herein.

## SECOND CLAIM FOR RELIEF
**Violation of Arizona's Uniform State Antitrust Act,**
**Ariz. Rev. Stat. § 44-1401, *et seq.***
**(By Plaintiffs on Behalf of the Arizona Class)**

113. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

114. During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

115. The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

116. In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

29

      i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

      ii.    allocating products in the United States in furtherance of their agreements; and

      iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

117.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

118.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

119.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq.*

      i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Arizona; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Frozen Potato Products.

30

ii.     During the Class Period, the Defendants' illegal conduct substantially affected Arizona commerce.

iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

120.    By reason of the foregoing, the Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

### THIRD CLAIM FOR RELIEF
**Violation of California's Cartwright Act,**
**Cal. Bus. & Prof. Code § 16700, *et seq.***
**(By Plaintiffs Logan McGath and Thomas Valenzuela Individually and on Behalf of the California Class)**

121.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

122.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

123.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

124.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

i.      participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products

31

at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

ii.   allocating products in the United States in furtherance of their agreements; and

iii.  participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

125.   The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

126.   The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

127.   The Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq.*

i.   During the Class Period, the Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. The Defendants have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, Frozen Potato Products at supra-competitive levels; to prevent competition in the sale of Frozen Potato Products; and to pool, combine, and directly and indirectly unite their interests connected with the sale of Frozen Potato Products to elevate the price at which Frozen Potato Products are sold.

ii. The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, Frozen Potato Products.

iii. For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and the following: (1) Fixing, raising, stabilizing, and pegging the price of Frozen Potato Products; and (2) Allocating among themselves the production of Frozen Potato Products.

iv. The combination and conspiracy alleged herein has had, *inter alia*, the following effects: (1) price competition in the sale of Frozen Potato Products has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for Frozen Potato Products sold by the Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) those who purchased Frozen Potato Products directly or indirectly from the Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

v. By virtue of the conduct alleged herein, the Defendants have entered into contracts, in concerted action with others, where the effect of such contract was

33

to substantially lessen competition in a line of trade or commerce in California under violation of Section 16720, *et seq.*

128.     As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property in that they paid more for Frozen Potato Products than they otherwise would have paid in the absence of the Defendants' unlawful conduct. As a result of the Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiffs and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

**FOURTH CLAIM FOR RELIEF**
**Violation of the Colorado State Antitrust Act**
**Colo. Rev. Stat. §§ 6 4-101, *et seq.***
**(By Plaintiffs on Behalf of the Colorado Class)**

129.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

130.     During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

131.     The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

132.     In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

i.      participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products

34

at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

ii.   allocating products in the United States in furtherance of their agreements; and

iii.   participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

133.   The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

134.   The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

135.   The Defendants have entered into an unlawful agreement in restraint of trade in violation of Colo. Rev. Stat. §§ 6-4-101 *et seq.*

i.   Colorado's legislature conferred broad standing under the Colorado State Antitrust Act of 2023 based on an important principle of protecting the public from anticompetitive behavior and of promoting competition in the marketplace. Colo. Rev. Stat. § 6-4-102

ii.   Under that Act, indirect purchasers have standing to maintain an action for damages based on the facts alleged in this Complaint. Colo. Rev. Stat. § 6- 4- 115.

iii.   Every contract, combination, or conspiracy in restraint of any part of trade or commerce is illegal. Colo. Rev. Stat. § 6-4-104.

35

iv.    Defendants made contracts or engaged in a combination or conspiracy with each other by maintaining, limiting, or discontinuing the production, manufacture, sale, or supply of Frozen Potato Products for the purpose of, and which had the desired effect of, fixing, controlling, or maintaining prices for Frozen Potato Products within the intrastate commerce of Colorado.

v.    Plaintiffs purchased Frozen Potato Products within the State of Colorado during the Class Period. But for Defendants' conduct set forth herein, the price of Frozen Potato Products would have been lower, in an amount to be determined at trial.

vi.    Plaintiffs and members of the Class were injured with respect to purchases of Frozen Potato Products in Colorado and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees and costs, and injunctive relief under Colo. Rev. Stat. §§ 6-4-101 *et seq.*

**FIFTH CLAIM FOR RELIEF**
**Violation of the Connecticut Antitrust Act**
**Connecticut General Statutes §§ 35-24 *et seq.***
**(By Plaintiffs on Behalf of the Connecticut Class)**

136.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

137.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

138.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

36

139.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

      i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

      ii.    allocating products in the United States in furtherance of their agreements; and

      iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

140.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

141.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

142.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of Connecticut General Statutes § 35-26.

      i.    Connecticut's legislature conferred broad standing under the Connecticut Antitrust Act based on an important principle of protecting the public from anticompetitive behavior and of promoting competition in the marketplace.

      ii.    Under the Connecticut Antitrust Act, indirect purchasers have standing to

maintain an action for damages based on the facts alleged in this Complaint. Conn. Gen. Stat. § 35-46a.

iii.    Every contract, combination, or conspiracy in restraint of any part of trade or commerce is unlawful. Conn. Gen. Stat. § 35-26.

iv.    Every contract, combination, or conspiracy that has the purpose of effect of fixing, controlling, or maintaining prices in any part of trade or commerce; or of fixing, controlling, maintaining, limiting, or discontinuing the production, manufacture, sale, or supply of any part of trade or commerce, is also unlawful. Conn. Gen. Stat. § 35-28.

v.    Defendants made contracts or engaged in a combination or conspiracy with each other by maintaining, limiting, or discontinuing the production, manufacture, sale, or supply of Frozen Potato Products for the purpose of, and which had the desired effect of, fixing, controlling, or maintaining prices for Frozen Potato Products within the intrastate commerce of Connecticut.

vi.    Plaintiffs purchased Frozen Potato Products within the State of Connecticut during the Class Period. But for Defendants' conduct set forth herein, the price of Frozen Potato Products would have been lower, in an amount to be determined at trial.

vii.    Plaintiffs and members of the Class were injured with respect to purchases of Frozen Potato Products in Connecticut and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees and costs, and injunctive relief under Conn. Gen. Stat. §§ 35-24 *et seq*.

## SIXTH CLAIM FOR RELIEF
### Violation of the District of Columbia Antitrust Act,
### D.C. Code § 28-4501, *et seq.*
### (By Plaintiffs on Behalf of the District of Columbia Class)

143.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

144.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

145.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

146.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

    i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

    ii.    allocating products in the United States in furtherance of their agreements; and

    iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

147.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

148.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

149.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Code § 28-4501.

i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

ii.    During the Class Period, the Defendants' illegal conduct substantially affected District of Columbia commerce.

iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

150.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq*. Accordingly, Plaintiffs

and members of the Damages Class seek all forms of relief available under District of Columbia

Code Ann. §§ 28-4501, *et seq.*

### SEVENTH CLAIM FOR RELIEF
**Violation of the Illinois Antitrust Act, 7**
**40 Ill. Comp. Stat. Ann. 10/1, *et seq.***
**(By Plaintiffs on Behalf of the Illinois Class)**

151.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

152.    During the Class Period, the Defendants and their co-conspirators engaged in a

continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products

in unreasonable restraint of trade and commerce and in violation of the various state antitrust and

other statutes set forth below.

153.    The contract, combination, or conspiracy consisted of an agreement among the

Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially

supra-competitive prices for Frozen Potato Products in the United States.

154.    In formulating and effectuating this conspiracy, the Defendants and their co-

conspirators performed acts in furtherance of the combination and conspiracy, including:

 i.    participating in meetings and conversations among themselves in the United

States and elsewhere during which they agreed to price Frozen Potato

Products at certain levels, and otherwise to fix, increase, inflate, maintain,

or stabilize effective prices paid by Plaintiffs and members of the Damages

Class with respect to Frozen Potato Products sold in the United States;

 ii.    allocating products in the United States in furtherance of their agreements;

and

 iii.    participating in meetings and conversations among themselves in the United

States and elsewhere to implement, adhere to, and police the unlawful

41

agreements they reached.

155. The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

156. The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

157. The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Illinois Antitrust Act, Ill. Comp. Stat. 10/1, *et seq*

    i.    The Illinois Antitrust Act prohibits any contract, combination or conspiracy to fix prices, limit production, or allocate markets. 740 Ill. Comp. Stat. 10/3.

    ii.    Plaintiffs purchased Frozen Potato Products within the State of Illinois during the Class Period. But for Defendants' conduct set forth herein, the price for Frozen Potato Products would have been lower, in an amount to be determined at trial.

    iii.    Under the Illinois Antitrust Act, indirect purchasers have standing to maintain an action for damages based on the facts alleged in this Complaint. 740 Ill. Comp. Stat. 10/7(2).

    iv.    Defendants made contracts or engaged in a combination or conspiracy with each other, though they would have been competitors but for their prior agreement, for the purpose of fixing, controlling, or maintaining prices for Frozen Potato Products sold, and/or for allocating products within the intrastate commerce of Illinois.

158.     By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of 740 Ill. Comp. Stat.10/3. Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under the Illinois Antitrust Act.

### EIGHTH CLAIM FOR RELIEF
**Violation of the Iowa Competition Law**
**Iowa Code § 553.1, *et seq.***
**(By Plaintiffs on Behalf of the Iowa Class)**

159.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

160.     During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

161.     The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

162.     In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

    i.     participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

    ii.     allocating products in the United States in furtherance of their agreements; and

     iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

163.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

164.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

165.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq.*

     i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Iowa; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

     ii.    During the Class Period, the Defendants' illegal conduct substantially affected Iowa commerce.

     iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

166.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.* Accordingly

**NINTH CLAIM FOR RELIEF**
**Violation of the Kansas Restraint of Trade Act**
**Kan. Stat. Ann. § 50-101, *et seq.***
**(By Plaintiffs on Behalf of the Kansas Class)**

167.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

168.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

169.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

170.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

     i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

     ii.    allocating products in the United States in furtherance of their agreements; and

     iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful

agreements they reached.

171.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

172.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

173.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Stat. §§ 50-101, *et seq.*

   i.    During the Class Period, the Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Kansas Stat. § 50-101. The Defendants have acted in violation of § 50-101 to fix, raise, stabilize, and maintain prices of, and allocate markets for, Frozen Potato Products at supra-competitive levels; to prevent competition in the sale of Frozen Potato Products; and to pool, combine, and directly unite their interests in connection with the sale of Frozen Potato Products to elevate the price at which Frozen Potato Products are sold.

   ii.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Kansas; (2)  Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Damages Class were deprived of free and open

competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

iii.     During the Class Period, the Defendants' illegal conduct substantially affected Kansas commerce.

iv.      As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

174.     By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50- 101, *et seq.*

**TENTH CLAIM FOR RELIEF**
**Violation of the Maine's Antitrust Statute,**
**Me. Rev. Stat. Ann. tit. 10 § 1101, *et seq.***
**(By Plaintiffs on Behalf of the Maine Class)**

175.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

176.     During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

177.     The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

178.     In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

ii.   allocating products in the United States in furtherance of their agreements; and

iii.  participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached

179.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

180.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

181.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Me. Rev. Stat. tit. 10, §§ 1101, *et seq.*

i.    The Defendants entered into a combination in restraint of trade in violation of Me. Rev. Stat. tit. 10, § 1101.

ii.   The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Maine; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiffs and members of the Damages Class were deprived of free and open

competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

iii.    During the Class Period, the Defendants' illegal conduct substantially affected Maine commerce.

iv.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

182.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Me. Rev. Stat. tit. 10, §§ 1101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Me. Rev. Stat. tit. 10, §§ 1101, *et seq.*

<u>ELEVENTH CLAIM FOR RELIEF</u>
**Violation of the Maryland Antitrust Act Maryland Code,
Com. Law § 11-201, et seq
(By Plaintiffs on Behalf of the Maryland Class)**

183.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs

184.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

185.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

186.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including

    i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

    ii.    allocating products in the United States in furtherance of their agreements; and

    iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

187.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

188.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

189.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maryland Antitrust Act, Maryland Code, Com. Law § 11-204, *et seq.*

    i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Maryland; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maryland; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products

50

ii.     During the Class Period, the Defendants' illegal conduct substantially affected Maryland commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

190.    By reason of the foregoing, Defendants have entered into an agreement in restraint of trade in violation of the Maryland Antitrust Act. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Maryland Code, Com. Law § 11-201, *et seq.*

### TWELFTH CLAIM FOR RELIEF
**Violation of the Michigan Antitrust Reform Act Mich.
Comp. Laws § 445.771, *et seq.*
(By Plaintiffs on Behalf of the Michigan Class)**

191.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

192.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

193.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

194.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

i.     participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize

51

effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

ii.     allocating products in the United States in furtherance of their agreements; and

iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

195.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

196.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

197.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of Mich. Comp. Laws §§ 445.771, *et seq.*

i.      The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

ii.      During the Class Period, the Defendants' illegal conduct substantially affected Michigan commerce.

iii.   As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

198.   By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

### THIRTEENTH CLAIM FOR RELIEF
**Violation of the Minnesota Antitrust Law,**
**Minn. Stat. § 325D.49, *et seq.***
**(By Plaintiffs on Behalf of the Minnesota Class)**

199.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs

200.   During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

201.   The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

202.   In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

i.   participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize

effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

ii.     allocating products in the United States in furtherance of their agreements; and

iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

203.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

204.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

205.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq.*

i.      The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Frozen Potato Products.

ii.     During the Class Period, the Defendants' illegal conduct substantially affected Minnesota commerce.

iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

206.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

**FOURTEENTH CLAIM FOR RELIEF**
**Violation of the Mississippi Antitrust Statute,**
**Miss. Code Ann. § 75-21-1, *et seq.***
**(By Plaintiffs on Behalf of the Mississippi Class)**

207.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

208.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

209.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

210.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

    ii.    allocating products in the United States in furtherance of their agreements; and

    iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

211.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

212.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

213.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq.*

    i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Frozen Potato Products.

    ii.    During the Class Period, the Defendants' illegal conduct substantially affected Mississippi commerce.

iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

iv.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §§ 75-21-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mississippi Code Ann. §§ 75-21-1, *et seq.*

### FIFTEENTH CLAIM FOR RELIEF
**Violation of the Nebraska Junkin Act,**
**Neb. Rev. Stat. § 59-801, *et seq.*,**
**(By Plaintiffs on Behalf of the Nebraska Class)**

214.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

215.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

216.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

217.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize

effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

ii.    allocating products in the United States in furtherance of their agreements; and

iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

218.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

219.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

220.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq.*

i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

ii.    During the Class Period, the Defendants' illegal conduct substantially affected Nebraska commerce.

iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

221.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

**SIXTEENTH CLAIM FOR RELIEF**
**Violation of the Nevada Unfair Trade Practices Act,**
**Nev. Rev. Stat. § 598A.010, *et seq.***
**(By Plaintiffs on Behalf of the Nevada Class)**

222.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

223.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

224.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

225.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize

effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

ii.   allocating products in the United States in furtherance of their agreements; and

iii.   participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

226.   The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

227.   The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

228.   The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

i.   The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Nevada; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

ii.   During the Class Period, the Defendants' illegal conduct substantially affected Nevada commerce.

      iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

229.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*

**SEVENTEENTH CLAIM FOR RELIEF**
**Violation of New Hampshire's Antitrust Statute,**
**N.H. Rev. Stat. Ann. tit. XXXI, § 356:1, *et seq.***
**(By Plaintiffs and on Behalf of the New Hampshire Class)**

230.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

231.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

232.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

233.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

      i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize

61

effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

ii. allocating products in the United States in furtherance of their agreements; and

iii. participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

234. The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

235. The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

236. The Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq.*

i. The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

ii. During the Class Period, the Defendants' illegal conduct substantially affected New Hampshire commerce.

iii.     As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

237.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

**EIGHTEENTH CLAIM FOR RELIEF**
**Violation of the New Mexico Antitrust Act,**
**N.M. Stat. Ann. §§ 57-1-1,** *et seq.*
**(By Plaintiffs on Behalf of the New Mexico Class)**

238.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

239.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

240.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

241.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

i.     participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize

effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

ii.    allocating products in the United States in furtherance of their agreements; and

iii.   participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

242.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

243.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

244.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

i.     The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

ii.    During the Class Period, the Defendants' illegal conduct substantially affected New Mexico commerce.

64

iii.     As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

245.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57- 1-1, *et seq.*

### NINETEENTH CLAIM FOR RELIEF
**Violation of the New York Donnelly Act,**
**N.Y. Gen. Bus. Law §340**
**(By Plaintiffs on Behalf of the New York Class)**

246.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

247.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

248.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

249.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

i.     participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize

65

effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

ii.   allocating products in the United States in furtherance of their agreements; and

iii.  participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

250.   The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

251.   The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

252.   The Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq.*

i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout New York; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products when they purchased Frozen Potato Products, or purchased products that were otherwise of lower quality than they would have been absent the

66

Defendants' and their co-conspirators' illegal acts, or were unable to purchase products that they otherwise would have purchased absent the illegal conduct.

ii.     During the Class Period, the Defendants' illegal conduct substantially affected New York commerce.

iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

253.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq.* The conduct set forth above is a *per se* violation of the Act. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq.*

### TWENTIETH CLAIM FOR RELIEF
**Violation of the North Carolina General Statutes**
**N.C. Gen. Stat. § 75-1, *et seq.***
**(By Plaintiffs on Behalf of the North Carolina Class)**

254.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

255.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

256.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

257.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

67

       i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

      ii.    allocating products in the United States in furtherance of their agreements; and

     iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

258.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

259.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

260.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1.1, *et seq.*

       i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages

Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

ii.     During the Class Period, the Defendants' illegal conduct substantially affected North Carolina commerce.

iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

261.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq.*

### TWENTY-FIRST CLAIM FOR RELIEF
**Violation of the North Dakota Uniform State Antitrust Act,
N.D. Cent. Code § 51-08.1, *et seq.*
(By Plaintiffs on Behalf of the North Dakota Class)**

262.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

263.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

264.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

265.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

69

      i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

     ii.    allocating products in the United States in furtherance of their agreements; and

   iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

266.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products

267.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

268.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

      i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages

Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

ii.    During the Class Period, the Defendants' illegal conduct had a substantial effect on North Dakota commerce.

iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

269.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

**TWENTY-SECOND CLAIM FOR RELIEF**
**Violation of the Oregon Antitrust Law,**
**Or. Rev. Stat. § 646.705, *et seq.***
**(By Plaintiffs on Behalf of the Oregon Class)**

270.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

271.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

272.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

273.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

71

      i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

     ii.    allocating products in the United States in furtherance of their agreements; and

   iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

274.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

275.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

276.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq.*

      i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Oregon; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

      ii.    During the Class Period, the Defendants' illegal conduct had a substantial effect on Oregon commerce.

     iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

277.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

### TWENTY-THIRD CLAIM FOR RELIEF
**Violation of the Rhode Island Antitrust Act,**
**Rhode Island General Laws §§ 6-36-1, *et seq*.**
**(By Plaintiffs on Behalf of the Rhode Island Class**

278.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

279.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

280.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

281.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

      i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products

73

at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

ii. allocating products in the United States in furtherance of their agreements; and

iii. participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

282. The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

283. The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

284. The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Rhode Island General Laws §§ 6-36-1, *et seq.*

i. The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

74

ii. During the Class Period, the Defendants' illegal conduct had a substantial effect on Rhode Island commerce.

iii. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

285. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Rhode Island General Laws §§ 6-36-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Rhode Island General Laws §§ 6-36-1, *et seq.*

### TWENTY-FOURTH CLAIM FOR RELIEF
**Violation of the South Dakota Antitrust Statute,**
**S.D. Codified Laws § 37-1-3.1, *et seq.***
**(By Plaintiffs on Behalf of the South Dakota Class)**

286. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

287. During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

288. The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

289. In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

i. participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products

at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

ii.   allocating products in the United States in furtherance of their agreements; and

iii.  participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

290.   The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

291.   The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

292.   The Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1, *et seq.*

i.   The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

    ii.    During the Class Period, the Defendants' illegal conduct had a substantial effect on South Dakota commerce.

    iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

293. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

**TWENTY-FIFTH CLAIM FOR RELIEF**
**Violation of the Tennessee Trade Practices Act,**
**Tenn. Code Ann. § 47-25-101, *et seq.***
**(By Plaintiffs on Behalf of the Tennessee Class)**

294. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

295. During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

296. The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

297. In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

    i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products

at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

ii.    allocating products in the United States in furtherance of their agreements; and

iii.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

298.    The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products

299.    The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

300.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq.*

i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

  ii.  During the Class Period, the Defendants' illegal conduct had a substantial effect on Tennessee commerce.

  iii.  As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

301. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

**TWENTY-SIXTH CLAIM FOR RELIEF**
**Violation of the Utah Antitrust Act,**
**Utah Code Ann. §§ 76-10-3101, *et seq.***
**(By Plaintiffs on Behalf of the Utah Class)**

302. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

303. During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

304. The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

305. In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

  i.  participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products

at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

ii. allocating products in the United States in furtherance of their agreements; and

iii. participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

306. The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

307. The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

308. The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-3101, *et seq.*

i. The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Utah; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra- competitive, artificially inflated prices for Frozen Potato Products.

80

     ii.    During the Class Period, the Defendants' illegal conduct had a substantial effect on Utah commerce.

     iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

309.    By reason of the foregoing, the Defendants' have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-3101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-3101, *et seq.*

## TWENTY-SEVENTH CLAIM FOR RELIEF
### Violation of the Vermont Consumer Fraud Act,
### Vt. Stat. Ann. tit. 9, §§ 2451, *et seq.*
### (By Plaintiffs on Behalf of the Vermont Class)

310.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

311.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

312.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

313.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

     i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products

at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

ii.   allocating products in the United States in furtherance of their agreements; and

iii.  participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

314.   The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

315.   The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

316.   The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq.*

i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

ii.   During the Class Period, the Defendants' illegal conduct had a substantial effect on Vermont commerce.

      iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

317.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq.*

### TWENTY-EIGHTH CLAIM FOR RELIEF
**Violation of the West Virginia Antitrust Act,**
**W. Va. Code § 47-18-1, *et seq.***
**(By Plaintiffs on Behalf of the West Virginia Class)**

318.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

319.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

320.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

321.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

      i.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

ii. allocating products in the United States in furtherance of their agreements; and

iii. participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

322. The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

323. The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

324. The Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq.*

i. The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

ii. During the Class Period, the Defendants' illegal conduct had a substantial effect on West Virginia commerce.

iii.     As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

325.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under West Virginia Code §§ 47-18- 1, *et seq.*

## TWENTY-NINTH CLAIM FOR RELIEF
**Violation of the Wisconsin Antitrust Act,**
**Wis. Stat. Ann. § 133.01(1)**, *et seq.*
**(By Plaintiffs on Behalf of the Wisconsin Class)**

326.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

327.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

328.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

329.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

i.      participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize

effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

ii.   allocating products in the United States in furtherance of their agreements; and

iii.  participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

330.   The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

331.   The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

332.   The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, *et seq.*

i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

ii.   During the Class Period, the Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

iii.     As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

333.    By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, et seq. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, et seq.

334.    Plaintiffs and members of the Damages Class in each of the above states have been injured in their business and property by reason of the Defendants' unlawful combination, contract, conspiracy and agreement. Plaintiffs and members of the Damages Class have paid more for Frozen Potato Products than they otherwise would have paid in the absence of the Defendants' unlawful conduct. This injury is of the type that the antitrust laws of the above states were designed to prevent and flows from that which makes the Defendants' conduct unlawful.

335.    In addition, the Defendants have profited significantly from the aforesaid conspiracy. The Defendants' profits derived from its anticompetitive conduct come at the expense and detriment of the Plaintiffs and the members of the Damages Class.

336.    Accordingly, Plaintiffs and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

<u>THIRTIETH CLAIM FOR RELIEF</u>
**Violation of the Arkansas Deceptive Trade Practices Act,**
**Ark. Code Ann. § 4-88-101, *et seq.***
**(By Plaintiffs on Behalf of the Arkansas Class)**

337.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

338. The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

339. The Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101, *et seq.*

   i. The Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Frozen Potato Products were sold, distributed, or obtained in Arkansas and took efforts to conceal its agreements from Plaintiffs and members of the Damages Class.

   ii. The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

   iii. The Defendants' unlawful conduct had the following effects: (1) Frozen Potato Products Products price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) Frozen Potato Products Products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

   iv. During the Class Period, the Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

     v.    As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

340.    The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code, § 4-88-107(a) and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

**THIRTY-FIRST CLAIM FOR RELIEF**
**Violations of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200*, et seq.* (the "UCL")**
**(By Plaintiffs Logan McGath and Thomas Valenzuela Individually and on Behalf of the California Class)**

341.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

342.    The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

343.    The Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq.*

     i.    During the Class Period, the Defendants marketed, sold, or distributed Frozen Potato Products in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

     ii.    This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from the Defendants for

89

acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

iii.    The Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of the Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above;

iv.    The Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.*, of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

v.    The Defendants' acts or practices are unfair to purchasers of Frozen Potato Products in the State of California within the meaning of Section 17200, California Business and Professions Code;

vi.    The Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

vii.    Plaintiffs and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and

benefits that may have been obtained by the Defendants as a result of such business acts or practices.

viii. The illegal conduct alleged herein is continuing and there is no indication that the Defendants will not continue such activity into the future.

ix. The unlawful and unfair business practices of the Defendants have caused and continue to cause Plaintiffs and the members of the Damages Class to pay supra-competitive and artificially-inflated prices for Frozen Potato Products. Plaintiffs and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

x. The conduct of the Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

344. As alleged in this Complaint, the Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by the Defendants' unfair competition. Plaintiffs and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by the Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

**THIRTY-SECOND CLAIM FOR RELIEF**
**Violation of the Colorado Consumer Protection Act**
**Colorado Rev. Stat. § 6-1-101,** *et seq.*
**(By Plaintiffs on Behalf of the Colorado Class)**

345. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

346. The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

91

347. The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Colorado Consumer Protection Act, Colorado Rev. Stat. § 6-1-101, *et seq.*

      i.    The Defendants engaged in an unfair and deceptive trade practices during the course of their business dealings, which significantly impacted Plaintiffs as an actual or potential purchaser of the Defendants' goods and which caused Plaintiffs to suffer injury.

     ii.    Defendants took efforts to conceal their agreements from Plaintiffs.

   iii.    Defendants' unlawful conduct had the following effects in Colorado: (1) price competition for Frozen Potato Products was restrained, suppressed, and eliminated; (2) Frozen Potato Products prices were raised, fixed, maintained, and stabilized at artificially high levels; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Frozen Potato Products.

    iv.    During the Class Period, Defendants' illegal conduct substantially affected Colorado commerce and consumers.

348. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Colorado Rev. Stat. § 6- 1-101, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute and as equity demands.

### THIRTY-THIRD CLAIM FOR RELIEF
**Violation of the District of Columbia Consumer Protection Procedures Act,**
**D.C. Code § 28-3901, *et seq.***
**(By Plaintiffs on Behalf of the District of Columbia Class)**

349.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

350.    The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

351.    The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*

  i. The Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which Frozen Potato Products were sold, distributed or obtained in the District of Columbia.

  ii. The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904. Plaintiffs were not aware of the Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by the Defendants for Frozen Potato Products. The Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price. Moreover, Plaintiffs lacked any meaningful choice in purchasing Frozen Potato Products because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiffs could avoid the overcharges. The Defendants' conduct with regard to sales of Frozen Potato Products, including its illegal conspiracy to secretly fix the price of Frozen Potato Products at supra-

93

competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited the Defendants at the expense of Plaintiffs and the public. The Defendants took grossly unfair advantage of Plaintiffs. The suppression of competition that has resulted from the Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for Frozen Potato Products.

    iii.    The Defendants' unlawful conduct had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Frozen Potato Products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

352.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury. The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**THIRTY-FOURTH CLAIM FOR RELIEF**
**Violation of the Florida Deceptive and Unfair Trade Practices Act,**
**Fla. Stat. § 501.201, *et seq.***
**(By Plaintiffs on Behalf of the Florida Class)**

353.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

94

354.    The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

355.    The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

      i.    The Defendants' unlawful conduct had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Florida; (2) Frozen Potato Products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

     ii.    During the Class Period, the Defendants' illegal conduct substantially affected Florida commerce and consumers.

    iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

356.    The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**THIRTY-FIFTH CLAIM FOR RELIEF**
**Violation of Hawaii Unfair and Deceptive Trade Practices Act**
**Haw. Rev. Stat. § 480-2**
**(By Plaintiffs on Behalf of the Hawaii Class)**

357.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

358.     The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

359.     The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes § 480-2.

      i.     The Defendants' unlawful conduct had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Frozen Potato Products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

      ii.     During the Class Period, the Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

      iii.     As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

360.     The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Revised Statutes § 480-2, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

### THIRTY-SIXTH CLAIM FOR RELIEF
**Violation of the Massachusetts Consumer Protection Act,
Mass. Gen. Laws ch. 93A § 1, *et seq.*
(By Plaintiffs on Behalf of the Massachusetts Class)**

361.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

362.    The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

363.    The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Mass. G.L. c. 93A, §2.

    i.    The Defendants were engaged in trade or commerce as defined by G.L. c.93A.

    ii.    The Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at artificial and non-competitive levels, the prices at which Frozen Potato Products were sold, distributed, or obtained in Massachusetts and took efforts to conceal its agreements from Plaintiffs and members of the Damages Class.

    iii.    The Defendants' unlawful conduct had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) Frozen Potato Products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

    iv.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class were injured and are threatened with further injury.

    v.    The Defendants have been or will be served with a demand letter in accordance with G.L. c. 93A, § 9, or, upon information and belief, such

97

service of a demand letter was unnecessary due to the Defendants not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth.

364.     By reason of the foregoing, the Defendants engaged in unfair competition and unfair or deceptive acts or practices, in violation of G.L. c. 93A, §2. The Defendants and their co-conspirators' violations of Chapter 93A were knowing or willful, entitling Plaintiffs and members of the Damages Class to multiple damages.

## THIRTY-SEVENTH CLAIM FOR RELIEF
### Violation of the Minnesota Consumer Fraud Act,
### Minn. Stat. § 325F.68, *et seq.*
### (By Plaintiffs on Behalf of the Minnesota Class)

365.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

366.     The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

367.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

368.     The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

369.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*

      i.    The Defendants engaged in unfair and deceptive trade practices during the course of their business dealings, which significantly impacted Plaintiffs as purchasers of the Defendants' goods, and which caused Plaintiffs to suffer injuries.

98

ii.    The Defendants took efforts to conceal their agreements from Plaintiffs and the members of the Damages Class.

iii.    The Defendants' unlawful conduct had the following effects in Minnesota:

iv.    (1) price competition for Frozen Potato Products was restrained, suppressed, and eliminated; (2) Frozen Potato Products prices were raised, fixed, maintained, and stabilized at artificially high levels; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Frozen Potato Products.

v.    During the Class Period, the Defendants' illegal conduct substantially affected Minnesota commerce and consumers.

vi.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325D.43, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute and as equity demands.

### THIRTY-EIGHTH CLAIM FOR RELIEF
**Violation of the Missouri Merchandising Practices Act,**
**Mo. Ann. Stat. § 407.010, *et seq.***
**(By Plaintiffs on Behalf of the Missouri Class)**

370.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

371.    The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

372.    The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*

i. Plaintiffs and the Damages Class purchased Frozen Potato Products for personal, family, or household purposes.

ii. The Defendants engaged in the conduct described herein in connection with the sale of Frozen Potato Products in trade or commerce in a market that includes Missouri.

iii. The Defendants agreed to, and did in fact, affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which Frozen Potato Products were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiffs and members of the Damages Class.

iv. The Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Damages Class concerning its unlawful activities and artificially inflated prices for Frozen Potato Products. It concealed, suppressed, and omitted facts that would have been important to Plaintiffs and members of the Damages Class as they related to the cost of Frozen Potato Products they purchased.

v. The Defendants misrepresented the real cause of price increases and/or the absence of price reductions in Frozen Potato Products by making public statements that were not in accord with the facts.

vi. The Defendants' statements and conduct concerning the price of Frozen Potato Products were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of the Damages Class to believe that they were

100

purchasing Frozen Potato Products at prices established by a free and fair market.

vii.     The Defendants' unlawful conduct had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Missouri; (2) Frozen Potato Products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

viii.    The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

ix.      As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Damages Class suffered ascertainable loss of money or property.

x.       Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et*

*seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

**THIRTY-NINTH CLAIM FOR RELIEF**
**Violation of the Montana Consumer Protection Act of 1973**
**Mont. Code, §§ 30-14-101, *et seq.***
**(By Plaintiffs on Behalf of the Montana Class)**

373.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

374.    The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

375.    The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Consumer Protection Act of 1973, Mont. Code, §§ 30-14-101, *et seq.*

i.    The Defendants' unlawful conduct had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Montana; (2) Frozen Potato Products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

ii.    During the Class Period, The Defendants' illegal conduct substantially affected Montana commerce and consumers.

iii.    As a direct and proximate result of The Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

102

iv.  The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-101, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**FOURTIETH CLAIM FOR RELIEF**
**Violation of the Nebraska Consumer Protection Act,**
**Neb. Rev. Stat. § 59-1601, *et seq.***
**(By Plaintiffs on Behalf of the Nebraska Class)**

376.  Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

377.  The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

378.  Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat § 59-1601, *et seq*

i.  Defendants' unlawful conduct had the following effects in Nebraska: (1) price competition for Frozen Potato Products was restrained, suppressed, and eliminated; (2) Frozen Potato Products prices were raised, fixed, maintained, and stabilized at artificially high levels; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Frozen Potato Products.

ii.  During the Class Period, Defendants marketed, sold, or distributed Frozen Potato Products in Nebraska, and Defendants' illegal conduct substantially affected Nebraska commerce and consumers.

iii.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

### FORTY-FIRST CLAIM FOR RELIEF
**Violation of the New Mexico Unfair Practices Act,**
**N.M. Stat. Ann. §§ 57-12-1, *et seq.***
**(By Plaintiffs on Behalf of the New Mexico Class)**

379.  Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

380.  The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

381.  The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq.*

i.  The Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non- competitive and artificially inflated levels, the prices at which Frozen Potato Products were sold, distributed or obtained in New Mexico and took efforts to conceal its agreements from Plaintiffs and members of the Damages Class.

ii.  The aforementioned conduct on the part of the Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, *inter alia*, resulted in a gross disparity between the value received by Plaintiffs and the members of the Damages Class and the prices paid by them for Frozen Potato Products as set forth in N.M.S.A., § 57-12- 2E. Plaintiffs were not aware of the Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged.

104

There was a gross disparity of bargaining power between the parties with respect to the price charged by the Defendants for Frozen Potato Products. The Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price. Moreover, Plaintiffs lacked any meaningful choice in purchasing Frozen Potato Products because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiffs could avoid the overcharges. the Defendants' conduct with regard to sales of Frozen Potato Products, including its illegal conspiracy to secretly fix the price of Frozen Potato Products at supra- competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited the Defendants at the expense of Plaintiffs and the public. The Defendants took grossly unfair advantage of Plaintiffs. The suppression of competition that has resulted from the Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for Frozen Potato Products.

iii.   The Defendants' unlawful conduct had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Frozen Potato Products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

iv. During the Class Period, the Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

v. As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured and are threatened with further injury.

vi. the Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

**FORTY-SECOND CLAIM FOR RELIEF**
**Violation of Section 349 of the New York General Business Law**
**(By Plaintiffs on Behalf of the New York Class)**

382. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

383. The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

384. The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

i. The Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Frozen Potato Products were sold, distributed or obtained in New York and took efforts to conceal its agreements from Plaintiffs and members of the Damages Class.

ii. The Defendants and their co-conspirators made public statements about the prices of Frozen Potato Products and products containing Frozen Potato

Products that the Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for Frozen Potato Products and products containing Frozen Potato Products; and the Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

iii.   Because of the Defendants' unlawful trade practices in the State of New York, New York consumer class members who indirectly purchased Frozen Potato Products were misled to believe that they were paying a fair price for Frozen Potato Products or the price increases for Frozen Potato Products were for valid business reasons; and similarly situated consumers were potentially affected by the Defendants' conspiracy.

iv.   The Defendants knew that its unlawful trade practices with respect to pricing Frozen Potato Products would have an impact on New York consumers and not just the Defendants' direct customers.

v.   The Defendants knew that their unlawful trade practices with respect to pricing Frozen Potato Products would have a broad impact, causing consumer class members who indirectly purchased Frozen Potato Products to be injured by paying more for Frozen Potato Products than they would have paid in the absence of the Defendants' unlawful trade acts and practices.

vi.   The conduct of the Defendants described herein constitutes consumer- oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349,

107

which resulted in consumer injury and broad adverse impact on the public at large and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

vii.    The Defendants' unlawful conduct had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout New York; (2) Frozen Potato Products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

viii.    During the Class Period, the Defendants marketed, sold, or distributed Frozen Potato Products in New York, and the Defendants' illegal conduct substantially affected New York commerce and consumers.

ix.    During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates dominated and controlled, manufactured, sold and/or distributed Frozen Potato Products in New York.

x.    Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

**FORTY-THIRD CLAIM FOR RELIEF**
**Violation of the North Carolina Unfair Trade and Deceptive Practices Act,**
**N.C. Gen. Stat. § 75-1, *et seq.***
**(By Plaintiffs on Behalf of the North Carolina Class)**

385.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

108

386.     The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

387.     The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1, *et seq.*

   i.  The Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Frozen Potato Products were sold, distributed or obtained in North Carolina and took efforts to conceal its agreements from Plaintiffs and members of the Damages Class.

   ii.  The Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by the Defendants to cover up its illegal acts. Secrecy was integral to the formation, implementation and maintenance of the Defendants' price-fixing conspiracy. The Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs could not possibly have been aware. The Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases. The Defendants' public statements concerning the price of Frozen Potato Products created the illusion of competitive pricing controlled by market forces rather than supra-competitive pricing driven by the Defendants' illegal conspiracy. Moreover, the Defendants deceptively concealed its unlawful activities by mutually agreeing not to divulge the existence of the conspiracy to outsiders, conducting meetings and conversations in secret, confining the plan to a small group of higher-level

officials at each company and avoiding the creation of documents which would reveal the antitrust violations.

iii.     The conduct of the Defendants described herein constitutes consumer- oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner

iv.     The Defendants' unlawful conduct had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Frozen Potato Products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

v.     During the Class Period, the Defendants marketed, sold, or distributed Frozen Potato Products in North Carolina, and the Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

vi.     During the Class Period, the Defendants, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Frozen Potato Products in North Carolina.

388.     Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further

110

injury. The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

### FORTY-FOURTH CLAIM FOR RELIEF
**Violation of the Puerto Rico Antitrust Statute,**
**P.R. Laws Ann. tit. 10 §§ 258, *et seq.***
**(By Plaintiffs on Behalf of the Puerto Rico Class)**

389.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

390.    During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

391.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

392.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

   i. participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

   ii. allocating products in the United States in furtherance of their agreements; and

111

iii.   participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

393.   The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

394.   The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

395.   The Defendants have entered into an unlawful agreement in restraint of trade in violation of P.R. Laws Ann. tit. 10 §§ 258, *et seq.*

i.   The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Puerto Rico; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Puerto Rico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra- competitive, artificially inflated prices for Frozen Potato Products.

ii.   During the Class Period, the Defendants' illegal conduct had a substantial effect on Rhode Island commerce.

iii.   As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

112

396.     By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of P.R. Laws Ann. tit. 10 §§ 258, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under P.R. Laws Ann. tit. 10 §§ 258, *et seq.*

**FORTY-FIFTH CLAIM FOR RELIEF**<br>**Violation of Rhode Island Deceptive Trade Practices Act,**<br>**R.I. Gen Laws § 6-13.1-1, *et seq.***<br>**(By Plaintiffs on Behalf of the Rhode Island Class)**

397.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

398.     The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

399.     The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

    i.     Members of this Damages Class purchased Frozen Potato Products for personal, family, or household purposes.

    ii.     The Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Frozen Potato Products were sold, distributed, or obtained in Rhode Island.

    iii.     The Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning its unlawful activities and artificially inflated prices for Frozen Potato Products. The Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, it breached that duty by its silence. The

Defendants misrepresented to all consumers during the Class Period that its Frozen Potato Products prices were competitive and fair.

iv.  The Defendants' unlawful conduct had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) Frozen Potato Products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

v.  As a direct and proximate result of the Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of the Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by the Defendants' willful and deceptive conduct, as described herein.

vi.  The Defendants' deception, including its affirmative misrepresentations and omissions concerning the price of Frozen Potato Products, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing Frozen Potato Products at prices set by a free and fair market. The Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiffs and members of the Damages Class as they related to the cost of Frozen Potato Products they purchased. The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq.*, and, accordingly,

114

Plaintiffs and members of the Damages Class seek all relief available under that statute.

<u>**FORTY-SIXTH CLAIM FOR RELIEF**</u>
**Violation of the South Carolina Unfair Trade Practices Act,**
**S.C. Code Ann. § 39-5-10 *et seq.***
**(By Plaintiffs on Behalf of the South Carolina Class)**

400.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

401.     The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

402.     The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*

    i.    The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) Frozen Potato Products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

    ii.    During the Class Period, the Defendants' illegal conduct had a substantial effect on South Carolina commerce.

    iii.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

iv.     The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq.*, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

## FORTY-SEVENTH CLAIM FOR RELIEF
**Violation of the South Dakota Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws § 37-24, *et seq.*
(By Plaintiffs on Behalf of the South Dakota Class)**

403.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

404.     The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

405.     The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the South Dakota Deceptive Trade Practices and Consumer Protection Statute, S.D. Codified Laws § 37-24, *et seq.*

i.     The Defendants agreed to, and did in fact, act in restraint of trade or commerce in South Dakota, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Frozen Potato Products were sold, distributed, or obtained in South Dakota.

ii.     The Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning the Defendants' unlawful activities and artificially inflated prices for Frozen Potato Products.

iii.     The Defendants misrepresented to all purchasers during the Class Period that the Defendants' Frozen Potato Products were competitive and fair.

iv.     The Defendants' unlawful conduct had the following effects in South Dakota: (1) price competition for Frozen Potato Products was restrained, suppressed,

116

and eliminated; (2) Frozen Potato Products were raised, fixed, maintained, and stabilized at artificially high levels; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition, and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Frozen Potato Products.

v. The Defendants' illegal conduct substantially affected South Dakota commerce and those who purchased Frozen Potato Products in South Dakota.

vi. As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of the Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by the Defendants' willful and deceptive conduct, as described herein.

vii. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Frozen Potato Products, misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Frozen Potato Products at prices set by a free and fair market.

viii. Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiffs and members of the Damages Class as they related to the cost of Frozen Potato Products they purchased.

ix. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Codified Laws § 37-24, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

### FORTY-EIGHTH CLAIM FOR RELIEF
**Violation of the Virginia Consumer Protection Act,**
**Va. Code Ann. § 59.1-196, *et seq.***
**(By Plaintiffs on Behalf of the Virginia Class**

406.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

407.     The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

408.     By reason of the conduct alleged herein, Defendants have violated Va. Code Ann. § 59.1-196, *et seq.*

409.     Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Virginia.

410.     Defendants' conduct amounted to a fraudulent act or practice committed by a supplier in connection with a consumer transaction.

411.     Defendants' unlawful conduct substantially affected Virginia's trade and commerce.

412.     Defendants' conduct was willful.

413.     As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiffs and the members of the Virginia Class have been injured in their business or property and are threatened with further injury.

414.     By reason of the foregoing, Plaintiffs and the members of the Virginia Class is entitled to seek all forms of relief, including treble damages or $1000 per violation, whichever is greater, plus reasonable attorneys' fees and costs under Va. Code Ann. § 59.1-204(A), *et seq.*

## FORTY-NINTH CLAIM FOR RELIEF
### Violation of the West Virginia Consumer Credit and Protection Act,
### W. Va. Code § 46A-6-101, *et seq.*
### (By Plaintiffs on Behalf of the West Virginia Class)

415.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

416.     The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the West Virginia Consumer Credit and Protection Act, W.Va. Code § 46A-6-101, *et seq.*

i.     The Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes West Virginia, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Frozen Potato Products were sold, distributed, or obtained in West Virginia.

ii.     The Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning the Defendants' unlawful activities and artificially inflated prices for Frozen Potato Products.

iii.     The Defendants affirmatively misrepresented to all purchasers during the Class Period that the Defendants' Frozen Potato Products prices were competitive and fair. Defendants' unlawful conduct had the following effects in West Virginia: (1) price competition for Frozen Potato Products was restrained, suppressed, and eliminated; (2) Frozen Potato Products prices were raised, fixed, maintained, and stabilized at artificially high levels; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Frozen Potato Products. The Defendants' illegal conduct

119

substantially affected West Virginia commerce and purchasers of Frozen Potato Products.

iv. As a direct and proximate result of the Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of the Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by the Defendants' willful and deceptive conduct, as described herein.

v. The Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Frozen Potato Products, misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Frozen Potato Products at prices set by a free and fair market.

vi. The Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiffs and members of the Damages Class as they related to the cost of the Frozen Potato Products they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W.Va. Code § 46A-6-101, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

<u>**FIFTIETH CLAIM FOR RELIEF**</u>
**Violation of the Hawaii Antitrust Act,**
**Haw. Rev. Stat. § 480-4**
**(By Plaintiffs on Behalf of the Hawaii Class)**

417. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

418. During the Class Period, the Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Frozen Potato Products

in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

419. The contract, combination, or conspiracy consisted of an agreement among the Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Frozen Potato Products in the United States.

420. In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

    i. participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Frozen Potato Products at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Frozen Potato Products sold in the United States;

    ii. allocating products in the United States in furtherance of their agreements; and

    iii. participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

421. The Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products.

422. The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

423. The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Hawaii Rev. Stat. § 480-4.

i.   The Defendants' combination or conspiracy had the following effects: (1) Frozen Potato Products price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Frozen Potato Products prices were raised, fixed, maintained and stabilized at artificially high levels throughout Hawaii; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Frozen Potato Products.

ii.  During the Class Period, the Defendants' illegal conduct substantially affected Hawaii commerce.

iii. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

424.   By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Hawaii Rev. Stat. § 480-4. Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under the Hawaii Antitrust Act.

### FIFTY-FIRST CLAIM FOR RELIEF
**Unjust Enrichment**
**(by Plaintiffs Individually on Behalf of the Nationwide Class or, Alternatively, on Behalf of Each State Class)**

425.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

426.   Plaintiffs bring this claim under the laws of each of the Indirect Purchaser States.

427.   As a result of its unlawful conduct described above, the Defendants have and will continue to be unjustly enriched. The Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of Frozen Potato Products.

428. The Defendants have benefited from its unlawful acts and it would be inequitable for the Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs and the members of the Damages Class for Frozen Potato Products.

429. Plaintiffs and the members of the Damages Class are entitled to the amount of the Defendants' ill-gotten gains resulting from its unlawful, unjust, and inequitable conduct. Plaintiffs and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a *pro rata* basis.

430. Pursuit of any remedies against the firms from which Plaintiffs and the members of the Damages Class purchased Frozen Potato Products subject to the Defendants' conspiracy would have been futile.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs requests that the Court enter judgment on its behalf and on behalf of the Class, by adjudging and decreeing as follows:

A. Determining that this action may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure;

B. Appointing Plaintiffs as representatives of the Class and the undersigned law firms as Class Counsel, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Class;

C. Adjudging and decreeing that the acts of the Defendants are illegal and unlawful, including the agreement, contract, combination, or conspiracy, and

123

acts done in furtherance thereof by Defendants and their co-conspirators be adjudged to have been a *per se* violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3);

D.    Awarding damages for Defendants' violations of the Sherman Act (15 U.S.C. §§ 1, 3);

E.    Entering judgment against Defendants, jointly and severally, and in favor of Plaintiffs and members of the Class for treble the amount of damages sustained by Plaintiffs and the Class as allowed by law, together with costs of the action, including reasonable attorneys' fees, pre- and post-judgment interest at the highest legal rate from and after the date of service of this Complaint to the extent provided by law;

F.    Permanently enjoining and restraining Defendants, their affiliates, successors, transferees, assignees, and other offices, directors, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

G.    Permanently enjoining each of the Defendants, and their respective successors, assigns, parent, subsidiaries, affiliates, and transferees, and their officers, directors, agents, and representatives, and all other persons acting or claiming to act on behalf of Defendants or in concert with them, restraining

124

them against, in any manner, directly or indirectly, continuing, maintaining or renewing the combinations, conspiracy, agreement, understanding, or concert of action as alleged herein; and

H.    Awarding Plaintiffs and members of the Class such other and further relief as the case may require and the Court may deem just and proper under the circumstances.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims asserted in this Complaint that are so triable.

Dated: December 11, 2024                    Respectfully Submitted:

/s/ Robert M. Foote
Robert M. Foote (3124325)
Kathleen C. Chavez (6255735)
Elizabeth C. Chavez (6323726)
Bret K. Pufahl (6325814)
**FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC**
1541 East Fabyan Parkway, Suite 101
Geneva, IL 60134
rmf@fmcolaw.com
kcc@fmcolaw.com
ecc@fmcolaw.com
bkp@fmcolaw.com

*Local Liaison Counsel*

/s/ Adam J. Zapala
Adam J. Zapala (*pro hac vice* forthcoming)
Elizabeth Castillo (*pro hac vice* forthcoming)
Christian S. Ruano (*pro hac vice* forthcoming)
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
azapala@cpmlegal.com
ecastillo@cpmlegal.com
cruano@cpmlegal.com

*Counsel for Plaintiffs Logan McGath and Thomas Valenzuela and the Proposed Class*